# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ALEXANDRIA KELLEY | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } CASE NO. 5:17-CV-1239-HNJ |
| | } |
| DECATUR BAPTIST CHURCH | } |
| | } |
| Defendant. | } |

## AMENDED MEMORANDUM OPINION AND ORDER

This Title VII action for pregnancy discrimination proceeds before the court on Defendant's Motion to Dismiss Complaint. (Doc. 5). In its Motion, the Defendant argues the ecclesiastical abstention doctrine and ministerial exception bar prosecution of Plaintiff's claim. Based upon the following analysis, the court determines that factual disputes preclude dismissal of Plaintiff's claim pursuant to the doctrines pursued by the Defendant. Therefore, the court **DENIES** Defendant's Motion to Dismiss Complaint.

## BACKGROUND

The Complaint's well-pleaded factual allegations provide as follows. Defendant Decatur Baptist Church employed Plaintiff Alexandria Kelley as a maintenance and child care employee from March 17, 2015, to August 27, 2015. (Doc. 1 at ¶¶ 6-7). Kelley notified her employer at some point during the summer of 2015 that she was

pregnant. (*Id.* at ¶ 9). Danny Holmes, a pastor at Decatur Baptist, became aware Kelley was pregnant, and subsequently Decatur Baptist terminated Kelley's employment on August 27, 2015. (*Id.* at ¶ 10). Decatur Baptist informed Kelley that it terminated her because of the pregnancy. (*Id.* at ¶ 11).

In an affidavit attached to Decatur Baptist's Motion, Holmes asserts that he discharged Kelley because she engaged in sexual conduct outside of marriage – which violates biblical standards – and she sowed discord among the daycare workers. (Doc. 5-2 at ¶¶ 5-7). An affidavit by Mindy Monroe, Decatur Baptist Church Daycare Director, corroborates Holmes's assertions. (*Id.* at ¶ 4).

Kelley filed a claim with the Equal Employment Opportunity Commission, alleging pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(k), 2000e–2(a)(1)–(2). The EEOC issued a determination on February 10, 2017, that Decatur Baptist discharged Kelley because of her pregnancy. (Doc. 1 at ¶ 12; Doc. 9-1).

## ANALYSIS

### A. Disputed Issues of Fact Preclude the Court from Adjudicating the Ecclesiastical Abstention Doctrine's Applicability to Kelley's Claim

In its Motion to Dismiss, Decatur Baptist argues that the court lacks subject matter jurisdiction to adjudicate this dispute because assessing the discharge decision involves review of religious doctrine, an exercise which violates the ecclesiastical abstention doctrine. Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court

determines that a factual dispute precludes dispositive application of the doctrine at this juncture.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend. I. Among the doctrines established under the foregoing clauses' purview, the ecclesiastical abstention doctrine, also known as the church autonomy doctrine, requires "civil courts to abstain from deciding issues connected to 'theological controversy, church discipline, ecclesiastical government, or conformity of members of the church to the standard of morals required of them.'" *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, No. 15-13755, 2018 WL 258782, at *2 (11th Cir. Jan. 2, 2018) (quoting *Crowder v. S. Baptist Convention*, 828 F.2d 718, 722 (11th Cir. 1987)) (citing *Watson v. Jones*, 80 U.S. 13 Wall. 679, 733 (1871)); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 723 (1976); *Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 493–94 (5th Cir. 1974)[1]). In such disputes, civil courts risk, one, abridging the free exercise of religion by affecting religious conduct, and, two, "establishing" a religion by enforcing "a particular religious faction." *Myhre*, 2018 WL 258782 at *2 (citing *Crowder*, 828 F.2d at 721).

The First Amendment does not entirely exempt decisions by religious organizations from adjudication, as civil courts "may apply neutral principles of law to

---

[1] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit, all decisions of the former Fifth Circuit announced prior to October 1, 1981).

decide church disputes that 'involve no consideration of doctrinal matters.'" *Myhre*, 2018 WL 258782 at *2 (quoting *Jones v. Wolf*, 443 U.S. 595 (1979)). However, when a matter does not present a proper occasion for the application of neutral principles, a "dispute involving the application of church doctrine and procedure to discipline one of its members is not appropriate for secular adjudication." *Myhre*, 2018 WL 258782 at *2 (citing *Milivojevich*, 426 U.S. at 723; *Crowder*, 828 F.2d at 726). Therefore, "civil courts may not use the guise of the 'neutral principles' approach" to determine matters of religious doctrine, polity, governance, etc. *Crowder*, 828 F.2d at 725.

Most critically at this juncture, the ecclesiastical abstention doctrine incites the subject matter jurisdiction of the court to adjudicate Kelley's claim. *Myhre*, 2018 WL 258782 at *2 (citing Fed. R. Civ. P. 12(b)(1)); *see also Milivojevich*, 426 U.S. at 713-14 ("'civil courts exercise no jurisdiction'" "'where a subject-matter of dispute'" "'concerns theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them'") (quoting *Watson*, 13 Wall. at 733-734).

In pertinent respects, the Eleventh Circuit establishes particular modes of review for Rule 12(b)(1) challenges to subject matter jurisdiction:

> [A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. If the challenge is facial, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised. . . . Accordingly, the court must consider the allegations in the plaintiff's complaint as true. . . . A facial attack on the complaint requires the court merely to look and see if

4

> the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. . . . Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered. Furthermore, . . . the district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing, *inter alia*, *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (internal quotation marks and alterations omitted). Importantly, when a subject matter jurisdiction issue involves "a *factual challenge*[,] the district court *must* give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *McElmurray*, 501 F.3d at 1251 (citing *Williamson*, 645 F.2d at 414) (emphasis in original); *see also id.* at 414 ("a judge may be required to hear oral testimony where the facts are complicated and testimony would be helpful").

Based upon the foregoing exposition, the court cannot properly adjudicate Decatur Baptist's Rule 12(b)(1) motion at this time. As the Background reveals, the parties present diametrically opposed renderings of the most important event at issue: Kelley avers that Holmes discharged her because she was pregnant, and Decatur Baptist contends that Holmes discharged her because she violated religious tenets. If Decatur Baptist declares truthfully the reasons for Kelley's discharge, then the

ecclesiastical abstention doctrine applies to bar Kelley's action; otherwise, its assertions constitute pretext buttressing Kelley's pregnancy discrimination claim. *C.f., Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 628 (1986) ("the [court] violates no constitutional rights by merely investigating the circumstances of [plaintiff's] discharge in this case, if only to ascertain whether the ascribed religious-based reason was in fact the reason for the discharge").

Kelley argues that the ministerial exception defense represents the proper basis for applying First Amendment concerns to her claim; therefore, she concludes the ecclesiastical abstention doctrine does not apply to her Title VII claim. However, the court heeds the authoritative guidance of the Eleventh Circuit, when it recently applied the ecclesiastical abstention doctrine to claims for breach of contract and implied covenants, fraud, conversion, conspiracy, and contractual interference, stemming from a church's cancellation of a former employee's retirement benefits. *Myhre*, 2018 WL 258782 at *2.

Furthermore, although the religious freedom doctrines originate from the same First Amendment concerns, they do not completely overlap. As the next section's analysis portrays, the ministerial exception defense applies to any religious authority's decision regarding a minister, regardless of the reasons undertaken for the decision. *See Hosanna–Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 194–95 (2012) ("The purpose of the [ministerial] exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception

instead ensures that the authority to select and control who will minister to the faithful . . . is the church's alone" because it is "a matter 'strictly ecclesiastical.'") (citations omitted). The ecclesiastical abstention doctrine only applies to decisions regarding religious doctrine, theology, tenets of faith, etc., matters which extend beyond decisions regarding the employment of ministers. In the absence of any clearer precedent, the court declines to prohibit Decatur Baptist from relying upon the ecclesiastical abstention doctrine at the appropriate stage of this case.

As the Eleventh Circuit requires, the factual challenge at bar compels the court to afford Kelley an opportunity to conduct discovery on the disputed issues and present her contentions at a hearing. Therefore, the court will deny Decatur Baptist's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

### B. Fact Issues Preclude Rule 12(b)(6) Dismissal of the Pregnancy Discrimination Claim on the Basis of the Ministerial Exception

Decatur Baptist contends Kelley was a minister, and thus, the ministerial exception forbids the court's review of the discharge decision. As the following analysis portrays, the face of Kelley's complaint does not portray Decatur Baptist prevailing on its affirmative defense. Therefore, Decatur Baptist's Rule 12(b)(6) motion regarding the ministerial exception does not command dismissal at this stage of the case.

7

1. *Standard Of Review*

Rule 12(b)(6), Federal Rules of Civil Procedure, permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss. First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue. *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine whether they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability

requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id.* at 678, 679 (citations omitted).

2. *Application*

The ministerial exception "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna–Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 (2012). "The exception ... ensures that the authority to select and control who will minister to the faithful—a matter strictly ecclesiastical—is the church's alone." *Id.* at 194–95 (internal quotation marks and citation omitted). "The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful . . . is the church's alone" because it is "a matter 'strictly ecclesiastical.'" *Id.* at 194–95 (citations omitted).

Although the Supreme Court determined "[t]he ministerial exception is not limited to the head of a religious congregation," and insulates a religious organization's "selection of those who will personify its beliefs," *id.* at 188, 190, there exists no "rigid formula for deciding when an employee qualifies as a minister." *Id.* at 190. Nevertheless, the Supreme Court provided some guidance on the circumstances that might qualify an employee as a minister. First, an employee is more likely to be a

9

minister if a religious organization holds the employee out as a minister by bestowing a formal religious title. *See id.* at 191. Although an ecclesiastical title "by itself, does not automatically ensure coverage, the fact that an employee has been ordained or commissioned as a minister is surely relevant." *Id.* at 193.

A second consideration is the "substance reflected in that title," such as "a significant degree of religious training followed by a formal process of commissioning." *Id.* at 191. Third, an employee whose "job duties reflect [ ] a role in conveying the Church's message and carrying out its mission" is likely to be covered by the exception, even if the employee devotes only a small portion of the workday to strictly religious duties and spends the balance of her time performing secular functions. *Id.* at 192. Finally, an employee who holds herself out as a religious leader is more likely to be considered a minister. *Id.* at 191.

More critically at this juncture, the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." *Id.* at 195 n.4. The court may not dismiss a claim pursuant to Rule 12(b)(6) if the complaint does not demonstrate an affirmative defense on its face. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("the applicability of [an affirmative] defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion")); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) ("A

complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim.") (citation omitted).

Based upon the foregoing precedent, the court cannot grant Decatur Baptist's Rule 12(b)(6) motion to dismiss. On the face of Kelley's Complaint, the well pleaded facts do not indicate Kelley served as a minister for Decatur Baptist. As the Background depicts, the Complaint merely declares that Kelley was a maintenance and child care worker. Decatur Baptist argues in its Motion and supporting briefs that Kelley was a minister charged with "equipping, training, and evangelizing the next generation according to biblical standards and morals," (Doc. 5-1 at 5), yet in her opposition Kelley disputes she served such a role. Therefore, these disputed issues prevent the court from applying the ministerial exception as a matter of law.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Defendant Decatur Baptist's Motion to Dismiss Complaint. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), the court **ORDERS** Decatur Baptist to file its Answer to the Complaint within 14 days of entry of the **original order** adjudicating the Motion to Dismiss.

**DONE** this 9th day of May, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE